UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

KEVIN ROBERT MALVICK,

        Plaintiff,

        v.                                              Case No. 22-cv-0625-bhl

LANGLADE COUNTY,
NURSE TRINI, and
NP SAMANTHA,

        Defendants.

## SCREENING ORDER

Plaintiff Kevin Robert Malvick, who is currently incarcerated at the Langlade County Jail and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On June 7, 2022, the Court screened his complaint and gave him the opportunity to file an amended complaint, which he did on June 29, 2022. The Court will screen the amended complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE AMENDED COMPLAINT

As the Court previously explained, in screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).

ALLEGATIONS OF THE AMENDED COMPLAINT

Malvick alleges that his ribs and shoulder were injured during his arrest on June 15, 2021. The next day, Malvick claims he informed Defendant Nurse Trini about the pain, but the nurse told him there was nothing he could do but give him ibuprofen. A few days later, Malvick was examined by Defendant Nurse Practitioner Samantha. Malvick states that he told her he has diabetes, a compromised right foot, a bad back and knees, and pain in his right shoulder. He asserts that he told her he needed his diabetic shoes and prescribed medications, but NP Samantha gave him only insulin for his diabetes. She denied him his Lyrica and Trazadone and his diabetic shoes. Dkt. No. 5 at 2-3.

According to Malvick, later in August his right foot began to bruise badly. He states that he was taken to the hospital for x-rays and his shoes were finally given to him. Then, on September 3, 2021, his foot began to swell badly. Malvick asserts that he was segregated and given antibiotics (he does not say by whom), but the antibiotics did not help, and his foot got worse. Malvick states that on September 11 his father called 911, and Malvick was taken to the hospital. He states that his foot was opened up to allow the pus to drain for hours. According to Malvick, the ER doctor instructed that he be taken to his foot doctor, but NP Samantha told him the doctor's schedule was full and he could not see him. Malvick asserts NP Samantha was lying, but he does not explain why he believes that. Malvick asserts that he was taken to a foot clinic for a simple bandage change. He states that he has sores on his compromised foot that are not healing. Malvick asserts that Nurse Trini wants to send him to a foot clinic, but he has refused to go because the clinic does nothing. Dkt. No. 5 at 3-4.

Malvick also asserts that his knees failed several times, but nothing was done. He does not clarify if anyone knew his knees were failing. He alleges that on November 25, 2021, his left knee

2

failed, and he fell and broke his finger. He asserts that on December 2, Nurse Trini informed him that his appointment with the orthopedic doctor was canceled. Malvick alleges that he now has a "compromised" finger, but he does not explain what he means by that. He states that on February 2, 2022, he was finally given oxycodone for the pain he is in. Dkt. No. 5 at 3.

Finally, Malvick alleges that jail staff opened his mail from the federal government without his permission and outside of his presence. He states that Nurse Trini offered him knee replacement surgery, but Jail Administrator Heidi informed him he would be billed for the surgery. She allegedly told him that the jail "can't handle someone like you in here with your medical problems." Malvick explains that he is now bedridden and that he has to starve himself to keep his blood sugars down. He states that he does not receive diabetic trays. Dkt. No. 5 at 4.

## THE COURT'S ANALYSIS

Because Malvick was a pretrial detainee at the relevant time, to state a claim under the Fourteenth Amendment based on the medical care he received (or did not receive) he must allege facts from which the Court can reasonably infer that "(1) he had an objectively serious medical condition; and (2) the defendants' response to the medical condition was objectively unreasonable." *Williams v. Ortiz*, 937 F.3d 936, 942-43 (7th Cir. 2019). The Court will allow Malvick to proceed on a claim against NP Samantha based on allegations that her treatment of his diabetes, foot, and knees was objectively unreasonable. Although it appears that she provided some treatment for his many conditions, further development of the record is necessary to determine whether her decisions to discontinue his prescriptions for Lyrica and Trazodone, delay providing him with his diabetic shoes, delay sending him to the hospital for his injured foot, and her failure to address his complaints of knee pain were objectively unreasonable.

3

Malvick does not, however, state a claim against Nurse Trini. He asserts that the day after he was arrested, he told Trini that his ribs and shoulder hurt. According to Malvick, Trini explained that he did not have the authority to prescribe pain medication other than ibuprofen, but he scheduled Malvick to see NP Samantha a few days later who had the authority to prescribe stronger pain medication. Nothing in Malvick's amended complaint suggests that his condition was an emergency or that Trini knew ibuprofen would be insufficient to address Malvick's pain, so the Court cannot reasonably infer that Trini's response was objectively unreasonable. *See, e.g., Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012). Malvick also asserts that Trini informed him that his appointment with an orthopedic doctor was canceled, but he does not allege that Trini was responsible for canceling the appointment, nor does he explain why the appointment was canceled. Trini is not liable merely for communicating a decision made by someone else. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (a defendant is liable for damages under §1983 only if he was personally responsible for the deprivation of a constitutional right). Finally, Malvick asserts that Trini wants to send him to a foot clinic, but he refuses to go because the clinic does nothing. However, inmates are not entitled to their preferred treatment, only to adequate care. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Malvick also fails to state a claim based on his allegations that mail from the federal government was opened outside of his presence. In addition to the fact that Malvick does not identify who opened his mail, the First Amendment does not preclude officials from inspecting mail for contraband. *See Wolff v. McDonald*, 418 U.S. 539, 575-76 (1974). Further, the Seventh Circuit has explained that opening public documents outside of an inmate's presence "is harmless and may be justified by the volume of such mail that a litigious prisoner can generate." *Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010). Thus, absent allegations that he lost a

4

legal claim or suffered an injury as a result of his mail being opened, Malvick fails to state a claim on this basis.  *See id.*; *Ray v. Wyciskalla*, 461 F. App'x 507, 509 (7th Cir. 2012).

Finally, Malvick includes Langlade County in the caption of his amended complaint, but he includes no allegations of a constitutional violation against the County, nor does he identify any policy or custom that allegedly harmed him.  Accordingly, Malvick fails to state a claim against the County.  *See Thomas v. Martija*, 991 F.3d 763, 773 (7th Cir. 2021).

**IT IS THEREFORE ORDERED** that Malvick's claims against Langlade County and Nurse Trini are **DISMISSED**.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint (Dkt. No. 5) and this order upon NP Samantha at the Langlade County Jail pursuant to Federal Rule of Civil Procedure 4.  Malvick is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service.  28 U.S.C. §1921(a).  The current fee for waiver-of-service packages is $8.00 per item mailed.  The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3).  Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that NP Samantha shall file a responsive pleading to the amended complaint.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Finally, Malvick is reminded that it is his responsibility to promptly notify the Court if he is released from custody or transferred to a different institution.  Malvick's failure to keep the

Court advised of his whereabouts may result in the Court dismissing his case without further notice.

Dated at Milwaukee, Wisconsin on July 7, 2022.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

6

Case 2:22-cv-00625-BHL   Filed 07/07/22   Page 6 of 6   Document 6